*194 OPINION.
Sternhagen :
1. The petitioner claims a deduction of $35,045.38 in 1917 as discount accrued in that year upon its first njortgage 4 per cent fifty-year bonds issued in 1887. The only question raised is whether there actually -was any discount involved in the issuance of petitioner’s bonds; for respondent concedes that if there was discount in 1887, when the bonds were issued, its amortization may be recognized and an aliquot part thereof, admittedly $35,045.38, deducted. Chicago, Rock Island & Pacific Railway Co., 13 B. T. A. 988; Kansas City Southern Railway Co., 16 B. T. A. 665; Terminal Railroad Association of St. Louis, 17 B. T. A. 1135.
The petitioner was organized in 1887 as the result of a compulsory reorganization of the ownership and financial structure of the railroad properties. Being newly organized and incorporated, there can be no question as to its separate legal existence, distinct from the old Railway Company. We may, for our present purpose, disregard the several intermediate local corporations and, without inquiry, treat them as if the petitioner stood in their shoes. The old Railway Company, being in default upon the interest obligation of its first and second mortgage bonds, was required to submit to a sale of its properties and to bring about a discharge of the said bonded indebtedness. It does not appear when these old bonds were issued; what were the terms of their issuance, that is, whether they were sold for cash at par, a discount or a premium or issued for property or as refunding bonds; whether they had matured or were about to mature; how they had been treated on the accounts, or whether amortization in respect of them had been an adopted practice. It appears only that they were outstanding; that interest was in default, and that $16,046,000 par value thereof were turned in by the holders and discharged. There was no assumption by the petitioner of the old liability. From the default had sprung the remedy of discharge and the court had required that such remedy be enforced. Whatever may *195 have been the terms of the old bonds, the financial means for performing them, or the method of accounting in respect of them, they necessarily came to an end with the discharge of the bonds. While to the bondholder it may perhaps have been of little practical moment whether there was a continuation of the old debt or a substitution of a new, this does not serve to wash out the legal steps and results which it required all of the machinery of the law to bring about.
The situation is, in this respect, quite different from that in Western Maryland Railway Co. v. Commissioner 33 Fed. (2d) 695, cited by petitioner, where the reorganization successor assumed the predecessor’s obligation of the old bonds and the court held that in the detailed circumstances the tax deduction for amortization ran with the obligation despite the substitution of the new obligor. Because the discounted bonds carried through the reorganization, it was held that the effect of the discount went with it. Whether the court was right or wrong in the weight and effect to be given to the reorganization and in its selection of the features to be emphisazed (see Missouri Pacific Railroad Co., 22 B. T. A. 267), the scope of the decision is not broad enough to comprehend a situation like this, where so far as appears, the original bonds were not sold at a discount, no amortization was accounted for or remained unaccounted for, and new bonds of the company were issued when the old were discharged. Unlike the Western Maryland, this petitioner is not seeking to deduct the remaining amortization of any discount on the original bonds, but claims to amortize ratably the excess ($1,909,830) of par value ($17,-955,830) of its own bonds over the par value ($16,046,000) of the old bonds discharged. If it is to succeed, therefore, it can not be by virtue of the Western Maryland decision, upon which it almost wholly relies, but by.virtue of a wider reason which neither that court nor any other has announced.
The amortization of discount and premium upon the issuance and sale of bonds has in various aspects been considered.[1] However elaborately we might now analyze it, since the amortization of discount has been openly recognized by the Treasury Department and sustained by this Board, and since it is not controverted here, we need only consider whether the facts of the present case are within the rule.
When we speak of discount, in the present connection, it is important that we think of substance and not let the word itself run away *196 with us. The recognition of amortization of discount is justified, not by the use of the word discount, but by the circumstances of the' original issue to which the word is applied. It would be begging the question to assume from the fact of amortization the existence of discount, because the question for decision is the propriety of the amortization. We must settle the major premise that this is discount before we can apply the minor that its amortization is deductible, to complete the syllogism.
Discount is a variable term, but the meaning which is clearly intended in this connection is, the difference between the face amount of the debt which, it is assumed, will be paid at maturity, and the actual lower amount which is received from the lender at the time of the creation of the debt. Colloquially, it is the difference between the face amount of the bonds and the lower cash sale price. The amortization of this discount imports a theory that the discount is an adjustment of the difference between the interest prescribed and the going market rate for money. It is sometimes metaphorically, called deferred interest. To a taxpayer on the cash basis, amortization is not deductible, Chicago & Alton R. R. Co. v. United States, 53 Ct. Cls. 41; Baldwin Locomotive Works v. McCoach, 215 Fed. 961, 221 Fed. 59, because whether this quasi-interest be treated as if paid at the time of the issuance of the bonds or at the time of their maturity, there is no room for a non-cash deduction at any other time when no actual disbursement takes place. On the accrual basis, the theory being that the discount is quasi-interest on a loan, it is treated as if accruing ratably year by year in enlargement of the actual interest expressed in terms in the bond. It seems plain, therefore, that this amortization is but a concept devised for accounting convenience and is limited by the resemblance to interest. Were the discount regarded as a variation in the amount of the principal of the loan either at the time it was made or at the time of repayment, it may be questioned whether even an accrual system could recognize it at intermediate times. It is only as quasi-interest that its amortization is given deductibility.
The respondent argues that the $11,955,830 bonded obligation was part of the purchase price assumed for the railroad properties; and that irrespective of the actual value of the properties acquired, their purchase price is not deductible whether by a process of amortization or otherwise. This is but another way of saying that the characteristics of the interest theory of discount are entirely absent and invoking affirmatively the more particular doctrine of nondeducti-bility of cost of property until its realization through sale or other disposition.
We see nothing in the stipulated facts to indicate discount. The bond issue may, for all that appears, have been no greater in face *197 amount than the value of the property would justify as principal. The fact that the bonds were issued to- the former bondholders by agreement in proportion to their holdings of old bonds does not, as to the issuer, amount to an exchange, since the old bonds were discharged and not acquired; nor does it establish any reason for treating part of the face amount as quasi-interest. There was nothing above 4 per cent by way of compensation for the use of money; and, in any event, the going rate is not in evidence. There was no cash received and no loan made. There was only an acquisition of encumbered property and a promise to pay for it.
The petitioner says that “ the effect is the same as if the petitioner had sold $17,955,830 of its first mortgage bonds for cash of $16,046,000 and with such proceeds paid off the old bonds. Had this been done there would be no doubt that petitioner had sustained a discount of $1,909,830. The same purpose has been accomplished by refunding the bonds and disposing of the old obligations in that manner just as effectively as had the old bonds been redeemed for cash.” But in the decision of the case, the facts and their legal significance are more important than the similarity between their practical effect and that of a hypothetical situation. United States v. Phellis, 257 U. S. 156; Anna M. Harkness, 1 B. T. A. 127; Gladys Bilicke, 20 B. T. A. 784; Chandler Shipbuilding Co., 22 B. T. A. 5. The clear intendment of the decree and the agreement was a sale of the property and a discharge of the old bonds, and this was carried out in fact and in law. This carried with it numerous incidents, and in the absence of fraud or other overwhelming reason, the legal significance of this deliberate conduct may not be brushed aside to afford relief from the onerous incident of income tax. Edward A. Langenbaoh, 2 B. T. A. 777.
We are of opinion that, accepting as we do for the purpose of this case the propriety of deducting amortization of discount in a proper case, the evidence does not establish such discount; and we therefore sustain the respondent in his disallowance of the deduction claimed on that account.
2. Out of the total issue of the aforesaid first mortgage bonds, the petitioner in 1917 purchased for retirement bonds having a face obligation of $116,000 and paid therefor $99,041.66. Reverting to what we have already said as to the origin of these bonds, it will be seen that $116,000 was part of the purchase price which the petitioner assumed to pay for the railroad property. How, however, it is enabled to discharge this much of the purchase price for $99,041.66. The respondent calls the difference of $16,958.34 a gain. So far as this Board is concerned, the question is settled by numerous decisions that no gain results under such circumstances. Independ *198 ent Brewing Co., 4 B. T. A. 870; New Orleans, Texas & Mexico Ry. Co., 6 B. T. A. 436; National Sugar Mfg. Co., 7 B. T. A. 577; Houghton do Dutton Building Trust, 20 B. T. A. 591. Respondent’s determination on this point is reversed.
In considering this point, we have assumed the soundness of our decision on the previous point as to amortization. If, however, our view on that point be not sustained, further consideration would be required of the present issue. For it may be doubted whether, after enjoying deductions of amortization predicated upon a promise to pay par, a taxpayer who pays less and thus belies the hypothesis upon which its deductions have been founded may say no gain has been realized. Cf. John F. Campbell Co., 15 B. T. A. 458; 50 Fed. (2) 487.
■ 3. In 1914, 1915, and 1916, petitioner received $41,738.84 rental for properties acquired in the crossing elimination. Beyond the petitioner’s own uncertainty about a possible claim of the city, there is nothing in the evidence to cast doubt on petitioner’s ownership of the rent when it was received. The bookkeeping credit to suspense account when received and subsequent inclusion in income of 1917 does not change the fact of receipt. Nor does petitioner’s mere doubt of its ownership. As rent it was received apparently contemporaneously with the tenant’s occupancy, and there is no problem of accrual. From the evidence, we find that no part of the $41,738.84 was income of 1917 and the respondent is reversed. Cleveland Railway Co. v. Commissioner, 36 Fed. (2d) 347, affirming 10 B. T. A. 310; Jacob F. Brown, 18 B. T. A. 859; Brooklyn Union Gas Co., 22 B. T. A. 507; cf. Lucas v. American Code Co., 280 U. S. 445.
Reviewed by the Board.

Judgment will be entered under Bule 50.

Smith, ARUndell, and McMahon concur in the result only.

 Baldwin Locomotive Works r. McCoach, 215 Fed. 967; 221 Fed. 59; Chicago & Alton R. R. Co. v. United States, 53 Ct. Cl. 41; New York Life Insurance Co. v. Edwards, 3 Fed. (2d) 280; 8 Fed. (2d) 851; 271 U. S. 109 ; Commissioner v. Old Colony R. R. Co., 26 Fed. (2d) 408; affirming 6 B. T. A. 1025; Corn Exchange Bank, 6 B. T. A. 158; Chicago, Rock Island & Pacific Railway Co., 13 B. T. A. 988, 1027; Missouri Pacific R. R. Co., 22 B. T. A. 267.