THE SUGAR CREEK COAL AND MINING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73758. Promulgated April 18, 1934.

*Evert L. Bono, Esq.*, for the petitioner.
*A. H. Fast, Esq.*, and *H. D. Thomas, Esq.*, for the respondent.

## OPINION.

SMITH: This is a proceeding for the redetermination of a deficiency in income tax for the fiscal year ended May 31, 1931, of $67,535.47. The issue presented is whether advance mining royalties, not included in gross income for the years in which received by reason of the fact that they were credited to a reserve account upon the petitioner's books of account, should be included in the gross income of the year in which they were credited to the petitioner's profit and loss account where the statute of limitations has operated against the assessment and collection of deficiencies for the years in which the royalties were received.

The petitioner was the lessor of certain coal lands located in Ohio. These lands were leased to an operating company as lessee, the lessee being given the right to mine the coal. The lease passed through several lessees by assignment, the Ohio Collieries Co. being the lessee during the taxable year. The lease provided for a certain royalty payable to the petitioner per ton of coal mined, and a minimum number of tons per year was fixed by the lease as the amount of coal on which the lessee company was to pay royalty. In the event the lessee failed to mine the minimum amount it had the right to take out such coal in future years. For most of the years from 1904 to the taxable year the lessee failed to mine the minimum tonnage although, in accordance with the terms of the lease, it paid to the petitioner each year up to 1927 the required royalty based on the minimum tonnage. The excess received by the petitioner each year over and above the royalty applicable to the tonnage actually mined was set up on the petitioner's books as "advanced royalty." Such amounts were not reported as income on its returns. On July 14, 1930, an agreement was entered into amending the lease in certain respects. Under the terms of this agreement the advance royalties, which at that time amounted to $563,319.25, were "mutually cancelled and released." They were taken into the income account of the petitioner as of May 31, 1931.

In the notice of deficiency upon which this proceeding is based the respondent has included the $563,319.25 as taxable income for the fiscal year ended May 31, 1931. This sum represents advance royalties from 1904 through 1927. At the hearing of this proceeding the respondent admitted that royalties paid to the petitioner previous to March 1, 1913, should not be included in the deficiency on the ground that they constituted capital. Since the taxpayer filed an amended return for 1927 which included royalties received in that year, the respondent admits that these sums should likewise be excluded from the total royalties to be included in the gross income of the taxable year. Thus, the ultimate position of the respondent

is that only advance royalties received for the taxable periods from March 1, 1913, to December 31, 1926, should be included in gross income for the fiscal year ended May 31, 1931. This action on the part of the respondent reduces the amount originally included in gross income from $563,319.25 to $217,355.33 and reduces the asserted deficiency of $67,535.47 to approximately $23,000.

It was admitted at the hearing that the respondent had examined the petitioner's books of account beginning with the fiscal year ended May 31, 1922, through the year 1926, but had not included in the gross income of those years, upon the audit, the amounts of advance royalties received in those years. It was stipulated at the hearing:

* * * the statute of limitations on assessments and/or collection of Federal Income and Profits Tax for all taxable years or periods prior to the fiscal year ending May 31, 1927 had run at the time the amended answer for 1927 was filed on July 8, 1931.

In such amended answer the respondent alleges:

(6) That in its returns of annual net income filed with the Collector of Internal Revenue for all years prior to the taxable year, petitioner did not report as income any portion of the advanced royalties in question; and that by reason of such action and representations thereby made, petitioner is precluded and estopped from claiming that the amount of advanced royalties is not taxable in the taxable year involved in this appeal.

We think it clear, as contended by the petitioner, that the advance royalties constituted taxable income of the years of receipt by the petitioner. *Bankers Pocahontas Coal Co.*, 18 B.T.A. 901; *New York, Chicago & St. Louis R.R. Co.*, 23 B.T.A. 177.

The only defense of the respondent to the claim of the petitioner that no part of the $563,319.25 advance royalties should be taken into the petitioner's income account in the fiscal year ended May 31, 1931, is that the petitioner is now estopped to deny that $217,355.33 of such amount constituted taxable income of that year; that the petitioner was obligated by the revenue acts in force from March 1, 1913, to December 31, 1926, to return the royalties received; that the respondent relied upon the correctness of the returns to his detriment; and that when the petitioner took into income in the fiscal year ended May 31, 1931, the royalties which had been received in prior income tax years, the amount constituted taxable income of that year. It is apparent that if the petitioner is not estopped to deny the taxability of the income in the fiscal year ended May 31, 1931, income in the amount of $217,355.33 escapes income tax.

We are of opinion that the respondent's contention is well founded. In *Edward G. Swartz, Inc.* v. *Commissioner*, (C.C.A., 5th Cir.) 69 Fed. (2d) 633, the court observed as follows:

This view makes it unnecessary for us to consider in detail respondent's position advanced as its sole defense before the Board and in the alternative

here, that petitioner and Swartz, its sole owners, have by returning the income as petitioner's and not Swartz's, estopped themselves from now claiming the contrary. We think, however, that this position is sound and that limitation having now run against taxing it to Swartz, it is too late for him now to assert that he, and not his creature, whom for years he has induced the Government to accept as the owner, is the real owner of the income. *Planters'. Cotton Oil Co.* v. *Hopkins*, 53 Fed. (2) 825; *Walker* v. *Commr.*, 63 Fed. (2) 346; *Commissioner* v. *Garber*, 48 Fed. (2) 526; *Lucas* v. *Hunt*, 45 Fed. (2) 781; *Hartwell Mills* v. *Rose*, —— Fed. (2) ——.

In *Crane* v. *Commissioner* (C.C.A., 1st Cir.), 68 Fed. (2d) 640; affirming 27 B.T.A. 360, the taxpayer failed to report improvements made upon land owned by him as taxable income. Upon a subsequent sale of the land he claimed the right to add to his cost basis the depreciated value of the improvements. The court denied his contention, declaring:

In the instant case, the petitioner failed to include in his return for the year 1921, or in any subsequent return, the fact that the improvements had been made. There can be no doubt that when the petitioner made his return in 1921 for 1920 income, he was under an obligation to return and pay a tax on the depreciated value of such improvements, as a part of his income for that taxable year. Article 48 of Regulation 45 (1920 Edition) as amended (T. D. 3062). *Miller* v. *Gearin*, 258 Fed. 225; *United States* v. *Boston & Providence R. R. Corp.*, 37 Fed. (2d) 670. While modified by later regulations giving the taxpayer the option of spreading over the life of the lease the depreciated value of such improvements, the petitioner's obligation to report such income continued to exist.

This obligation to report and pay a tax was never performed, and cannot now be enforced against the petitioner, because it is barred by the Statute of Limitations. The petitioner urges that he is entitled to the benefit of he Statute of Limitations, and so he is. The obligation can no longer be enforced. *But the failure, however innocent, to report this income, constituted in effect a statement that no such income was received, and the Government, in reliance thereon, failed to receive the amount of any such tax as might have resulted if the petitioner's returns had been accurate.* The statutes and regulation should not be construed to entitle a taxpayer to the benefit of an expenditure made by his lessee, when the taxpayer has failed to report or to pay a tax in the appropriate year or years upon the income received by virtue of the lessee's expenditure. [Italics ours.]

In *Moran* v. *Commissioner* (also C.C.A., 1st Cir.), 67 Fed. (2d) 601; affirming 26 B.T.A. 1154, the facts were that the decedent during his lifetime held certificates of deposit representing funds deposited with a bank. Interest was not credited to the holder on the books of the bank but was computed and paid when the certificates were presented for redemption. In 1928 the decedent presented the certificates, receiving a substantial amount of interest for that and prior years. He reported only interest earned in 1928, claiming that the remainder was income constructively received in prior years though he did not report it in such years. It was held that, since the decedent took the position that the income was not actually received

in prior years, he could not thereafter contend that it was not income to be reported in 1928 when it was received. The court held that it was unnecessary to decide whether the interest was not received by Moran until he collected it and upheld the Government's first contention, saying:

* * * Assuming,—as we are bound to assume on the record before us,—that Moran acted honestly, his conduct, in not including the interest as it accrued in his early returns, evidenced an election on his part to treat it as not received until actually collected. Having made that election and acted on it in his dealings with the government, and having had the benefit of that position, and rights having become fixed on that basis, we are clear that his estate ought not now to be allowed to repudiate the position so definitely taken nor to assert rights inconsistent therewith. *Magee* v. *United States*, 282 U.S. 432; *Davis* v. *Wakelee*, 156 U.S. 680; *Casey* v. *Galli*, 94 U.S. 673, 680; *Hartwell Mills* v. *Rose*, 61 Fed. (2d) 441 (C.C.A. 5). * * *.

In *Askin & Marine Co.* v. *Commissioner* (C.C.A., 2d Cir.), 66 Fed. (2d) 776; affirming 26 B.T.A. 409, the court held that where a taxpayer had charged off and claimed as deductions in prior years accounts which had not been determined worthless, it was estopped to deny that amounts recovered thereon during the taxable year should be taxed as income. In this connection, the court said:

* * * we think the petitioner is now clearly estopped from denying, to the prejudice of the government, the truth of the representations upon which it has succeeded in former years in obtaining deductions from its gross income. While the commissioner must investigate returns to satisfy himself of their correctness in fact and law, a taxpayer may not benefit at the expense of the government by misrepresenting facts under oath; by succeeding in having the commissioner accept its representations as the truth; and by claiming later that what it represented to be true might have been found false had the commissioner refused to have faith in the sworn return. *Commissioner* v. *Liberty Bank & Trust Co.* (C.C.A.) 59 F. (2d) 320.

We think it immaterial whether the doctrine applied in this case is that of estoppel or of some other analogous principle. It was stated by the Supreme Court in *Stearns Co.* v. *United States*, 2 Fed. Supp. 773; 291 U.S. 54:

* * * Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. The label counts for little. Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong. * * *'

The respondent's contentions are sustained.

*Judgment will be entered under Rule 50.*